UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO

JENNIFER LEWIS,

    Plaintiff and Counterdefendant,

v.                                                                                  No. 20-cv-705 JCH/KRS

XL CATLIN[1],

    Defendant and Counterclaimant.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff Jennifer Lewis's Motion for Partial Summary Judgment (Doc. 38, filed January 12, 2021) ("Lewis Motion"), and Defendant XL Catlin, a/k/a Greenwich Insurance Company's Motion for Summary Judgment (Doc. 39, filed January 12, 2021) ("Greenwich Motion"). The Motions are fully briefed.[2]

These Motions arise out of a denied claim for underinsured motorist insurance ("UIM") benefits that Plaintiff made after being allegedly hit by an underinsured motorist in Roswell, New

---

[1] The Complaint, filed in state court, named XL Catlin as the Defendant in this case. In its Notice of Removal [Doc. 1], Defendant kept the name XL Catlin in the caption but noted that XL Catlin is merely a trade name used occasionally for Greenwich Insurance Company and that XL Catlin is not a legal entity. The Defendant further asserted that as the real party in interest, Greenwich Insurance Company had the right to remove the action. After removal, the litigation continued with no apparent dispute between the parties that Defendant should have been named as Greenwich Insurance Company instead of XL Catlin. However, because the case was filed in this Court with XL Catlin in the caption and no motion to amend the caption was ever filed, the Court retains the nomenclature used in the Notice of Removal. However, that fact does nothing to alter the legal effect of this Memorandum Opinion and Order. Throughout this document, the Court refers to the Defendant as Greenwich Insurance Company.

[2] *See* Docs. 44 (Greenwich Response to Lewis Motion), 46 (Plaintiff's Response to Greenwich Motion), 47 (Greenwich Reply). The Court notes that Plaintiff did not reply to the Lewis Motion and the time for doing so has passed. The Court also notes that Plaintiff requests a hearing on the Motions (Doc. 50), even after failing to Reply to the Lewis Motion and almost two months after the Greenwich Motion was fully briefed. Given that Plaintiff declined to further inform the Court of her position in reply to her own brief, and that a hearing will not assist the Court in its resolution of the two Motions, the Court will **DENY** Plaintiff's request (Doc. 50).

Mexico, while she was driving a vehicle for her then employer, The Hershey Company ("Hershey") of Hershey, Pennsylvania. *See* Doc. 1, Ex. A ("Complaint") ¶ 6. Plaintiff argues in the Lewis Motion that Defendant, the UIM carrier for Hershey, breached the insurance contract when it declined to pay her UIM benefits. Specifically, Plaintiff alleges that the insurance contract was reformed to provide coverage because Defendant failed to comply with *Jordan v. Allstate Ins. Co.*, 2010-NMSC-051, 245 P.3d 1214 (N.M. 2010), which delineates the requirements that an insurer (Defendant) must follow when obtaining a valid UM/UIM waiver from the insured (Hershey) under New Mexico's statutory framework, N.M. Stat. Ann. § 66–5–301 and N.M. Admin. Code § 13.12.3. Lewis Mot. 3–5. Those requirements are: "(1) offer the insured UM/UIM coverage equal to his or her liability limits, (2) inform the insured about premium costs corresponding to the available levels of coverage, (3) obtain a written rejection of UM/UIM coverage equal to the liability limits, and (4) incorporate that rejection into the policy in a way that affords the insured a fair opportunity to reconsider the decision to reject, the policy will be reformed to provide UM/UIM coverage equal to the liability limits." *Jordan,* 245 P.3d at 1221.

Defendant's Motion is plain: New Mexico law does not apply to Hershey's UM/UIM waiver, therefore Plaintiff's claims fail as a matter of law. Greenwich Mot., *passim*. Defendant's position is grounded in the text of N.M. Stat. Ann. § 66–5–301, which provides that "[n]o motor vehicle or automobile liability policy insuring against loss resulting from liability . . . *shall be delivered or issued for delivery in New Mexico* with respect to any motor vehicle registered or principally garaged in New Mexico . . . ." § 66–5–301 (emphasis added).[3] Defendant argues that the Policy was not "delivered or issued for delivery in New Mexico," thus New Mexico's UM/UIM

---

[3] Defendant also relies on N.M. Admin. Code § 13.12.2, which limits the scope of § 13.12.3, New Mexico's Uninsured and Unknown Motorist Coverage regulation: "This rule [§ 13.12.3] shall govern the delivery or the issuance for delivery of any motor vehicle or automobile policy *in this state* . . . ." § 13.12.2 (emphasis added).

statutory framework and *Jordan*, the seminal New Mexico case interpreting that framework, does not apply to the Policy. The Court agrees.

As an initial matter, the Court will summarily DENY the five-page Lewis Motion pursuant to Local Rule 56.1, which requires the party moving for summary judgment to "refer with particularity to those portions of the record upon which the movant relies." D.N.M.LR-Civ. 56.1. Out of Plaintiff's seventeen proffered undisputed material facts, she cites to the record for only two of them. Nonetheless, the issues presented in the Lewis Motion, i.e., whether Defendant was required to comply with New Mexico law, will be fully addressed in the Court's resolution of the Greenwich Motion.

## I. FACTUAL BACKGROUND

Plaintiff "does not dispute any of Defendant's Statement of Material Facts with Defendant's Motion." Pl.'s Resp. 1. Therefore, the Court recites those facts in full.

### A. The Policy

Greenwich issued Commercial Lines Policy number RAD943773303 ("the Policy") to Hershey at 100 Crystal A Drive, Hershey, Pennsylvania, for the January 1, 2018, to January 1, 2019, policy period. Doc. 40, Ex. D. Greenwich first issued a commercial automobile policy to Hershey beginning on January 1, 2015, in response to a request for proposals by Hershey's insurance broker, Aon Risk Services Central, Inc. of Philadelphia, Pennsylvania. Doc. 39–1 (Declaration of Elizabeth Juarez) ¶ 3. Successive policies were issued annually thereafter on substantially the same terms. *Id*.

On or about October 26, 2017, Aon's Philadelphia office provided to Greenwich a Global Casualty Renewal Submission ("the 2018 Submission") for the policy term January 1, 2018 to January 1, 2019, for Hershey's casualty insurance program, including commercial auto liability,

commercial general liability, and workers' compensation insurance. *Id.* ¶ 4; *see also* Doc. 40–1 at 3–58 (Ex. A) (2018 Submission). In the 2018 Submission, Aon, on behalf of Hershey, requested "Symbol 6" coverage for uninsured and underinsured motorists coverage. Ex. A at 42. Consistent with its expectation that the Hershey auto policy would be renewed on terms similar to the expiring policy, Greenwich sent UM/UIM rejection forms for New Mexico and other states to Kymberly Saif of Aon on September 7, 2017, for presentation to Hershey and, if Hershey wished, execution by Hershey. Juarez Dec. ¶ 6. Ms. Saif returned the signed rejection forms to Greenwich on November 10, 2017. *Id.*

All of the rejection forms were signed on November 9, 2017, by Ryan J. McGuinness, Manager, Risk and Insurance, for The Hershey Company in Hershey, Pennsylvania. *Id.*; *see also* Ex. B (Docs. 39–1 at 7–80 (part 1), 39–2 at 1–56 (part 2)). Among the forms signed by Mr. McGuinness was a form entitled, "New Mexico – Selection or Rejection of Uninsured Motorists Coverage" ("the Rejection Form"), which provides:

> The New Mexico Laws (Section 66-5-301), amended, permit you, the insured named in the policy, to reject the Uninsured Motorists Coverage or to select a limit of liability higher than the minimum financial responsibility limit but not more than the limit of Liability Coverage in the policy. Uninsured Motorists Coverage provides insurance for the protection of persons insured under the policy who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, and for injury to or destruction of property.
>
> Uninsured Motorists Coverage includes Underinsured Motorists Coverage. An underinsured motorist means an operator of a motor vehicle with respect to the ownership, maintenance or use of which the sum of the limits of liability under all bodily injury liability insurance applicable at the time of the accident is less than the limit of liability under the Underinsured Motorists Coverage of your policy.
> In accordance with the New Mexico Laws (Section 66-5-301), amended, the undersigned insured (and each of them) –
>
> (Applicable item marked "X")
>
> ****

Ex. B pt. 2 at 7. Mr. McGuinness marked the item stating "rejects uninsured motorists coverage (including underinsured motorists coverages) in its entirety." *Id*.

Greenwich responded to the 2018 Submission with a proposal dated November 30, 2017. Juarez Dec. ¶ 7; Doc. 40–2 (Ex. C). With respect to automobile liability, Greenwich offered UM/UIM coverage pursuant to "Symbol 6," and with respect to "Limit," stated "Reject where allowable, Statutory Minimum all other." Ex. C at 24. The Policy was issued effective January 1, 2018. Doc. 40–3 at 28 (Ex. D pt. 1). In the Business Auto Declarations, the Hershey auto policy afforded a number of coverages for the covered autos identified in Item Two – Schedule of Coverages and Covered Autos of the Declarations, including Uninsured Motorists (UM) and Underinsured Motorists (UIM) (when not included in UM coverage) for vehicles identified with Symbol 06. Per Item Two, the "coverages will apply only to those 'autos' shown as covered 'autos.'" *Id*.

Per the Policy's Business Auto Coverage Form, CA 00 01 10 13, Symbol 6 is described as "Owned 'Autos' Subject To A Compulsory Uninsured Motorists Law," which means "[o]nly those 'autos' you own that because of the law in the state where they are licensed or principally garaged are required to have and cannot reject Uninsured Motorists Coverage. Doc. 40–4 at 13 (Ex. D pt. 2). This includes those 'autos' you acquire ownership of after the policy begins provided, they are subject to the same state uninsured motorists requirement." *Id*.

Consistent with the Rejection Form, the Hershey auto policy does not contain any endorsements that afford either UM or UIM coverage under New Mexico law. Doc. 39–2 at 7. Consistent with the Rejection Form, and the identification of only "Symbol 6" vehicles as covered autos for UM/UIM coverage, the Hershey auto policy's Forms Schedule indicates that UM/UIM coverage endorsements are only included for the states of Connecticut, Illinois, Kansas, Maine,

Maryland, Minnesota, Missouri, Nebraska, New Jersey, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Carolina, South Dakota, Vermont, Virginia, West Virginia, and Wisconsin. No New Mexico UM/UIM coverage endorsement is included in the Hershey auto policy, because New Mexico law allows rejection of UM/UIM coverage, and Hershey rejected UM/UIM coverage for New Mexico. Doc. 40–3 at 32–33 (Ex. D pt. 1).

Greenwich delivered the Hershey auto policy to Hershey's broker, Aon Risk Services Central, Inc., on February 14, 2018, via email with a file-sharing link. The office location of the Aon recipient was One Liberty Place, 1650 Market Street, Suite 1000, Philadelphia, PA 19103. Juarez Dec., ¶ 9, Ex. E.

### B. The Accident and Plaintiff's Claim

On or about March 14, 2018, Lewis reported to Greenwich that she had been involved in a collision while driving a company car provided to her by her employer, Hershey. She reported that while she was in line at a gas station in a shopping center parking lot, another vehicle tried to turn in front of her and collided with the left front portion of her car. Doc. 39–3 (Waterman Declaration) ¶ 3. Lewis submitted a workers' compensation claim for injuries suffered in the March 14, 2018 accident and has received workers' compensation benefits under a workers' compensation policy issued to Hershey by Greenwich. *Id.* ¶ 4.

On or about April 18, 2020, Lewis, through her counsel, notified Greenwich that she also was making a claim for UIM benefits under the Hershey auto policy with respect to the March 14, 2018 auto accident. *Id.* ¶ 5; *Id.* at 13–21 (Ex. G). On April 28, 2020, after determining that the Hershey auto policy did not provide New Mexico UIM coverage, Greenwich, through its third party claims administrator, Sedgwick Claims Management Services, Inc., sent a letter to Lewis's attorney advising that coverage was denied as the applicable policy afforded no UM/UIM

coverage. Waterman Dec. ¶ 6; *Id*. at 23 (Ex. H).

## II. LEGAL STANDARD

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986). A fact is considered material if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248–50. An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *See Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1215 (10th Cir. 2013). "The nonmoving party is entitled to all reasonable inferences from the record; but if the nonmovant bears the burden of persuasion on a claim at trial, summary judgment may be warranted if the movant points out a lack of evidence to support an essential element of that claim and the nonmovant cannot identify specific facts that would create a genuine issue." *Water Pik, Inc. v. Med-Systems, Inc.*, 726 F.3d 1136, 1143-44 (10th Cir. 2013). "At the summary judgment stage, non-movants ... are given wide berth to prove a factual controversy exists." *Sierra Club v. El Paso Gold Mines, Inc.*, 421 F.3d 1133, 1150 (10th Cir. 2005) (citation and quotation marks omitted).

If the moving party bears the burden of proof on its claims at trial, it must first affirmatively show that, on all the essential elements of his claims, no reasonable jury could find for the nonmovant. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986) (Brennan, J. dissenting). "Summary judgment in favor of the party with the burden of persuasion . . . is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Leone v. Owsley*, 810 F.3d 1149, 1153 (10th Cir. 2015) (quoting *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999)). "In other words, the evidence in the movant's favor must be so powerful that no reasonable jury would be free to disbelieve it. Anything less should result in denial of summary judgment."

*Leone*, 810 F.3d at 1153 (citation and quotations omitted). The district court's role is to "assess whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *El Paso Gold Mines*, Inc., 421 F.3d at 1150.

In analyzing cross-motions for summary judgment, a court "must view each motion separately, in the light most favorable to the non-moving party, and draw all reasonable inferences in that party's favor." *United States v. Supreme Court of New Mexico*, 839 F.3d 888, 906–07 (10th Cir. 2016). "Cross motions for summary judgment are to be treated separately; the denial of one does not require the grant of another." *Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n*, 483 F.3d 1025, 1030 (10th Cir. 2007).

### III.  ANALYSIS

#### A.  Count I –Breach of Contract

##### 1.  *Parties' Arguments*

Defendant's argument that it did not breach the Policy and that Plaintiff is not entitled to reformation under *Jordan* is twofold: (1) "this Court held on very similar facts in *Delgado v. Liberty Mut. Fire Ins. Co.*, No. 15-CV-196 JCH/GJF, 2017 WL 6375623 (D.N.M. Dec. 13, 2017) . . . [that] New Mexico law does not apply to determine the validity of Hershey's rejection of UM/UIM coverage, because the Hershey auto policy *was neither delivered nor issued for delivery in New Mexico*," Greenwich Mot. 8 (emphasis added), and  (2) "[u]nder Pennsylvania law, UM/UIM coverage must be offered, but the coverage is optional; a waiver of UM/UIM coverage must be signed and dated, but there is no requirement that the waiver be attached to the policy in order to be effective" nor is there a "statutory provision concerning vehicles registered or principally garaged outside of Pennsylvania." *Id*. at 13–14 (citing 75 Pa. C. S. § 1731).

For her part, Plaintiff proffers a United States District Court case out of Pennsylvania, *Douglas v. Discover Prop. & Cas. Ins. Co.*, 810 F. Supp. 2d 724, 726 (M.D. Pa. 2011), for the proposition that the Policy was issued and delivered in New Mexico. Pl.'s Resp. 2. Plaintiff further argues that if the "Court were to [follow the choice of law doctrine] *lex loci contractus* and apply Pennsylvania law . . . *Douglas*[] would control." *Id*. at 4.

At the outset, Plaintiff's reliance on *Douglas* as controlling is misplaced. Another district court's decision, whether it sits in Pennsylvania or New Mexico, no matter what law it applies, does not control this Court's analysis, or bind this Court. But more importantly, as further discussed below, in *Delgado* this Court already addressed under similar circumstances that New Mexico law/*Jordan* did not apply and will not deviate from that jurisprudence.

2. *New Mexico Law Does Not Apply*

The undisputed material facts establish that Pennsylvania law governs the Policy. *See Delgado*, 2017 WL 6375623, at *6 (under New Mexico Choice of law rules Georgia law governed a UPS policy when the insurer sent the "[p]olicy to UPS Supply in Georgia; that the [p]olicy applies to UPS Freight; and that UPS's staff in Georgia had authority to enter into contracts on behalf of UPS Freight." (relying on *Wilkeson v. State Farm Mut. Auto. Ins. Co.*, 2014-NMCA-077, 329 P.3d 749, 750 (N.M. Ct. App. 2014))). Here, the Policy was issued to Hershey, a Pennsylvania company; the Policy was delivered to Hershey's broker, Aon Risk Services Central, Inc., which is located in Philadelphia; and the UM/UIM rejection forms were signed in Pennsylvania by the manager of Hershey's Risk and Insurance division.

Now, given that Pennsylvania law controls, under a straightforward application of *Delgado*, New Mexico's UM/UIM coverage and rejection statute cannot apply. *See* 2017 WL 6375623, at *7 ("New Mexico's UM/UIM coverage and rejection statute, NMSA 1978, § 66-5-

301, did not apply because the "[p]olicy was not delivered or issued for delivery in New Mexico" nor was the vehicle at issue "registered or principally garaged in New Mexico."). Nonetheless, Plaintiff attempts, albeit briefly, to derail this application of *Delgado*. According to Plaintiff, *Delgado* is inapposite to the instant facts because (1) "th[at] vehicle [] was a tractor-trailer registered in Georgia" and (2) "the phrase 'delivered or issued for delivery' was not an issue in that case, and was not briefed in that case." Pl.'s Resp. 5–6. The Court is not persuaded.

As for the former argument, that the vehicle here was registered in New Mexico is not dispositive. Section 66-5-301 states, in relevant part: "[n]o motor vehicle or automobile liability policy . . . shall be delivered or issued for delivery in New Mexico with respect to any motor vehicle registered or principally garaged in New Mexico unless coverage is provided . . . for injury to or destruction of property as" as described further in the statute. As this Court alluded to in *Delgado*, for § 66-5-301 to apply the policy *must be delivered or issued in New Mexico* in addition to the registration/garaging requirement, i.e., the statute is conjunctive rather than disjunctive. And this view accords with a majority of courts who have analyzed similar UM/UIM statutes. *See McGoff v. Acadia Ins. Co.*, 2011 VT 102, ¶ 8, 190 Vt. 612, 615, 30 A.3d 680, 683 (2011) ("The two key phrases are connected by the term "with respect to" and thus are conjunctive rather than disjunctive, thereby requiring both elements to be satisfied for the statute to apply.").[4]

---

[4] *See, e.g.*, *Cherokee Ins. Co. v. Sanches*, 975 So.2d 287, 293 (Ala.2007) (declining to apply Alabama UM statute to fleet policy "issued and delivered in Tennessee" even though "undisputed evidence" indicated that vehicle was operated, maintained, and "principally garaged" in Alabama); *Gilbert v. Hodgkins*, No. CIV.A. CV-05-149, 2006 WL 1545532, at *2 (Me. Super. Ct. Mar. 16, 2006) (because "Maine's UIM requirement reaches only insurance contracts issued in the state of Maine, with respect to vehicles registered in or principally garaged in Maine," the state "only has an interest in implementing its policy with respect to UIM recovery where the injured party is covered by a UIM contract issued in Maine"); *Central Transport, Inc. v. Blake*, 985 S.W.2d 805, 809–10 (Mo. Ct. App. 1998) (Missouri statute did not apply because, even though vehicle was garaged in Missouri, policy was issued and delivered in Michigan); *Insurance Co. of Pa. v. Hampton*, 441 Pa .Super. 382, 657 A.2d 976, 978–79 (1995) (declining to apply Pennsylvania statute where vehicle was frequently garaged in Pennsylvania, but policy was issued, and vehicle registered, in Delaware); *Burns v. Aetna Cas. & Sur. Co.*, 741 S.W.2d 318, 322 (Tenn. 1987) (statute did not apply to fleet insurance policy issued in Connecticut and delivered in Rhode Island, even though vehicle was principally garaged in Tennessee).

As for the latter, Plaintiff misses the mark. This Court, on almost identical facts, explicitly held in *Delgado* that a policy "was not delivered or issued for delivery in New Mexico" because the insurer sent the policy to a Georgia company (UPS Supply), the policy applied to the subsidiary employer (UPS Freight), and the staff of UPS Supply had authority to bind UPS freight in contract. To recite the facts of this case, the Policy was issued to Hershey, a Pennsylvania company, was delivered to Hershey's broker in Philadelphia, and the UM/UIM rejection forms were signed by a Hershey senior/executive level manager in Pennsylvania. Accordingly, the Policy was delivered or issued for delivery in Pennsylvania.

Plaintiff's proffered case, *Douglas*, does not change this. The *Douglas* court concluded that an insurer delivered or issued for delivery a policy in Pennsylvania because (1) that "policy [was] replete with references to Pennsylvania law and clearly evinces that it has been created to insure vehicles operating in Pennsylvania" and (2) failing "to find that th[e] policy is not within the purview of [the Pennsylvania statute] . . . would allow corporations to evade Pennsylvania law based merely on a self-serving 'delivery' location." 810 F. Supp. 2d at 731. If this Court accepts that reasoning, an insurer could be deemed to have issued an insurance policy in all fifty states simply because the policy includes UM/UIM waivers that reference all fifty states. Moreover, instead of exploring the meaning of delivery and issuance, the *Douglas* court essentially accused the insurer of attempting to "evade Pennsylvania law based [] on a self-serving 'delivery' location" argument. *Id*. The Court will not do the same and therefore declines to follow *Douglas*.

The undisputed facts of this case establish that the Policy was delivered or issued for delivery in Pennsylvania and not New Mexico. Consequently, New Mexico's UM/UIM statute

does not apply, and the Court will not reform the Policy pursuant to *Jordan*.[5] Defendant is entitled to judgment as a matter of law on Count I.

### B. Counts II-IV

Plaintiff failed to respond to Defendant's request for summary judgment on Counts II-IV. Aside from Plaintiff now waiving the ability to do so,[6] Defendant is entitled to judgment on these counts as a matter of law, irrespective of whether New Mexico or Pennsylvania law applies.

*1. Count II—Bad Faith*

Defendant is entitled to summary judgment on Count II "because it had no contractual duty to pay [Plaintiff] UM coverage under the Policy." *Delgado v. Liberty Mut. Fire Ins. Co.*, 2017 WL 6375623, at *9 (D.N.M. Dec. 13, 2017). "[T]he concept of bad faith failure to pay in the insurance context does not arise unless there is a contractual duty to pay under the policy." *Id*. (quoting *Charter Serv., Inc. v. Principal Mut. Life Ins. Co.*, 1994-NMCA-007, 868 P.2d 1307, 1313 (N.M. Ct. App. 1994)); *see also Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 751 n.9 (3d Cir. 1999) ((rejecting a bad faith claim because "bad faith claims cannot survive a determination that there was no duty to defend . . . .").[7] Thus, Count II fails as a matter of law.

---

[5] The Court declines to explore whether Defendant complied with Pennsylvania's UM/UIM statute under Count I. Plaintiff explicitly constrained her breach of contract theory to NMSA § 66-5-301 and NRMA § 13.12.3.9. Plaintiff also has not made any arguments under Pennsylvania's statute.

[6] The Court's Local Rules provide that "[t]he failure of a party to file and serve a response in opposition to a motion within the time prescribed for doing so constitutes consent to grant the motion." D.N.M.LR-Civ 7.1(b). Implicit in that rule is that the failure to respond to an argument raised in a motion constitutes consent to grant the motion to the extent associated with that particular argument. Furthermore, under Tenth Circuit law, failing to respond constitutes waiver. *See, e.g., Cole v. New Mexico*, 58 F. App'x 825, 829 (10th Cir. Feb. 6, 2003) (unpublished) (argument waived when not raised in initial response to motion to dismiss); *Hinsdale v. City of Liberal, Kan.*, 19 F. App'x 749, 768 (10th Cir. Aug. 28, 2001) (unpublished) (plaintiff abandoned claim when failed to respond to arguments made in support of summary judgment).

[7] Under Pennsylvania law, "[t]here are two separate 'bad faith' claims that an insured can bring against an insurer: a contract claim for breach of the implied contractual duty to act in good faith, and a statutory bad faith tort claim under 42 Pa. Cons. Stat. Ann. Section 8371." *Westport Ins. Corp. v. McClellan*, 493 F. Supp. 3d 315, 330–31 (E.D. Pa. 2020) (citation omitted). Plaintiff makes no mention of the Pennsylvania statute, the Court therefore declines explore that line of claims.

2. *Count III—Unfair Insurance Practices Act*[8]

An insurer violates New Mexico law if it knowingly "fail[s] to promptly provide an insured a reasonable explanation of the basis relied on in the policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement." N.M. Stat. Ann. § 59A-16-20(N). Plaintiff believes Defendant's rejection of benefits caused violence to this provision. *See* Comp. ¶ 29. But the undisputed material facts demonstrate otherwise.

That is, on April 18, 2020, Plaintiff's counsel notified Defendant of the UM/UIM claim. Doc. 39–3 (Declaration of William Waterman) ¶ 5, Ex. G (pg. 13-21). On April 27, 2020, Defendant's claims administrator, Sedgwick Claims Management Services, (1) notified Plaintiff's counsel in writing that Defendant had "completed [its] coverage investigation and [] determined that [Hershey] did not elect to carry UM/UIM coverage on their policy" and (2) included "a copy of the endorsement signature pages for [Plaintiff's] reference." *Id*. ¶ 6, Ex. H (pg. 22-23). Clearly, these facts establish that no unfair or deceptive practice occurred by any stretch of the imagination. Or put another way, Defendant's explanation, which clearly indicates why it denied coverage, coupled with the attached proof of endorsement signature pages, delivered just nine days after the claim was filed, can only be described as reasonable. Defendant is entitled to judgment as a matter of law on Count III.

3. *Count IV—Punitive Damages*

Lastly, Plaintiff alleges that "Defendant's actions were meant to not only delay but ultimately to refuse to pay a fair settlement under the insurance contract of the amount actually due." Compl. ¶ 33. In fact, Plaintiff believes that "Defendant's conduct and actions . . . were so

---

[8] The Court will not address Pennsylvania's Unfair Practices Act because Plaintiff did not plead it in Count III, nor argue it in briefing. Under Count III, Plaintiff alleges violations of only New Mexico's Unfair Practices Act.

willful, wanton, reckless, grossly negligent, or without due regard for the rights of Plaintiff that Plaintiff is entitled to recover punitive damages." *Id*. ¶ 34.

Unfortunately, "[p]unitive damages may not be awarded unless there is an underlying award of compensation for damages." *Gonzales v. Surgidev Corp.*, 1995-NMSC-047, 899 P.2d 594, 597 (N.M. 1995) (citing N.M. Rules Ann. Civ. UJI 13-1827); *see also DiGregorio v. Keystone Health Plan E.*, 2003 PA Super 509, ¶ 29, 840 A.2d 361, 370 (2003) ("It is settled law that one cannot recover punitive damages independently from an underlying cause of action." (citing *Hilbert v. Roth*, 395 Pa. 270, 149 A.2d 648 (1959))). According, the Court will grant summary judgment in favor of Defendant on Count IV because Plaintiff's underlying claims fail as a matter of law.

### C. Defendant's Counterclaim for Declaratory Relief

Defendant "desires a judicial determination of its rights and duties under the [Policy] with respect to Lewis's claim for underinsured-motorists benefits under New Mexico law." Doc. 10 (Answer and Counterclaim) at 11. Defendant believes that "[a] judicial determination is necessary and appropriate at this time under the circumstances in order that the parties may ascertain their rights and duties" because "[s]aid controversy is incapable of resolution without judicial adjudication" and "Greenwich has no plain, speedy and adequate remedy at law[.]" *Id*.

Although the Court believes that a declaration at this point amounts to nothing more than gilding the lily, it will nevertheless grant summary judgment in favor of Defendant here. Specifically, the Court concludes "that by reason of the terms, definitions, conditions, exclusions, limitations, and endorsements of the [Policy], Greenwich has no duty to pay Lewis's claim for underinsured-motorists benefits under New Mexico law, because the [Policy] does not provide coverage for those benefits." *Id*.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff Jennifer Lewis's Motion for Partial Summary Judgment (Doc. 38) is **DENIED** and Defendant Greenwich Insurance Company's Motion for Summary Judgment (Doc. 39) is **GRANTED**. Plaintiff's request for a hearing (Doc. 50) is also **DENIED**.

_____
SENIOR UNITED STATES DISTRICT JUDGE